# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1565


**STATE OF LOUISIANA IN THE INTEREST OF A.L.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. JU-4545
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.


**AFFIRMED.**

**Leah Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA 70508**
**Telephone: (337) 262-1555**
**COUNSEL FOR:**
 **Appellee - State of La., Department of Social Services**

**James Daboval Landry**
**P. O. Box 1368**
**Crowley, LA 70527**
**Telephone: (337) 788-1850**
**COUNSEL FOR:**
 **Appellee - Julien (Unknown father)**

**Glen E. Howie**
**The Howie Law Office, L.L.C.**
**P. O. Box 932**
**Crowley, LA 70527**
**Telephone: (337) 785-8500**
**COUNSEL FOR:**
 **Appellee - A.L.**

**John Clay Lejeune**
**P. O. Box 1919**
**Crowley, LA 70527**
**Telephone:  (337) 788-1505**
**COUNSEL FOR:**
        **Appellant - M.A.L.**

**THIBODEAUX, Chief Judge.**

Michael Lange, a non-parent, sought custody as a parent of a minor child as a consequence of signing a birth certificate. The child had been born with drugs in his system, and the Louisiana Department of Social Services took immediate custody of the child at birth, placing him with certified foster parents with whom he has resided for two years. The trial court dismissed Mr. Lange's petition to establish custody. We affirm.

## I.

### ISSUES

We must decide whether the trial court abused its discretion in dismissing Mr. Lange's Petition to Establish Custody.

## II.

### FACTS AND PROCEDURAL HISTORY

Michael Lange signed the birth certificate of A.L. shortly after his birth on February 5, 2008, with the expectation of rearing A.L. with A.L.'s half sibling and Mr. Lange's two other children. None of the children are Mr. Lange's biological children, but the arrangements for Mr. Lange to raise A.L. were permitted by the mother and requested by other family members.

On February 6, 2008, the Louisiana Department of Social Services (DSS), upon notice of a child born with cocaine in his system, took immediate custody of A.L. and placed him with foster parents. At the adjudication hearing in March 2008, where A.L. was found to be a Child in Need of Care, Mr. Lange admitted that he was not the biological father of A.L., that he had never had sexual relations with the mother of A.L., and he stated that he no longer sought the adoption

of A.L. Upon the specific request of an assistant district attorney, Mr. Lange was ordered excused from further proceedings relating to A.L.

Notwithstanding this judicial proceeding, in August of 2009 the District Attorney's office obtained an order for child support against Michael Lange in the amount of $1,006.00 per month, with an arrearage of $3,018.00, based on his signature on A.L.'s birth certificate.

On September 17, 2009, Michael Lange filed a petition to establish custody. On September 23, 2009, A.L.'s mother legally surrendered her parental rights to A.L. She knew the biological father only by his first name, and DSS is attempting to locate the father for a surrender of rights so that A.L. can be legally adopted by the foster parents with whom he has lived since his birth two years ago.

Mr. Lange's petition to establish custody of A.L. was denied in October 2009; hence this appeal. With great disappointment in, and admonition for, the inconsistent actions of our state agencies, we must affirm the trial court's denial of Mr. Lange's Petition to Establish Custody of A.L.

III.

## LAW AND DISCUSSION

### Standing

Mr. Lange contends that the trial court erred in denying his petition for custody because the State of Louisiana had no standing to argue that the absence of a biological connection can act as a preclusion to custody or visitation. This argument lacks merit. The State of Louisiana Department of Social Services learned of the birth of A.L. with cocaine in his system and filed an order for custody within

two days of his birth in early February of 2008.[1]  The DSS is a party to these proceedings and has a statutory right to argue paternity.  More specifically, La.R.S. 9:396 provides in pertinent part as follows:

§ 396.  Authority for test; ex parte orders; use of results

A.  (1) Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court may, on its own initiative, or shall, under either of the following circumstances, order the mother, child, and alleged father, or the mother's husband or former husband in an action en desaveu, to submit to the collection of blood or tissue samples, or both, and direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures:

(a) Upon request made by or on behalf of any person whose blood or tissue is involved, provided that such request is supported by a sworn affidavit alleging specific facts which either tend to prove or deny paternity.

(b) Upon motion of any party to the action made at a time so as not to delay the proceedings unduly.

. . . .

B.  (1) The district attorney, in assisting the Department of Social Services in establishing paternity as authorized by R.S. 46:236.1.1 et seq., may file a motion with a court of proper jurisdiction and venue prior to and without the necessity of filing any other legal proceeding. . . .

Accordingly, under La.R.S. 9:396(A)(1)(b) and (B)(1), the DSS is a party to the action and has authority to order testing that establishes paternity.  Included therein is the authority to contest paternity, as paternity tests are used by all parties for both determining and contesting paternity.  While it is true that the State did not

---

[1] While Mr. Lange had signed the birth certificate in February 2008, he disavowed paternity in March 2008 and did not file his "Petition to Establish Custody" until September of 2009, when A.L. was already one and a half years old, and had been in the custody of the State and in placement with his foster parents for basically his entire life.

order paternity testing, and that the role of the State in this case is one in which the State is actually contesting an avowed paternity, the State does have standing to argue issues involving Mr. Lange's paternity.

Additionally, as the State points out, they are obligated under the Louisiana Children's Code, Articles 675, 700, 702 and 710, to establish a case plan to assure the health and safety of the child and to place the child in accordance with his best interest. Therefore a determination of Mr. Lange's eligibility to adopt or to obtain custody of or visitation rights with A.L. is squarely in the purview of the DSS.

**Acknowledgment**

Mr. Lange further contends that his acknowledgment of A.L. by signing the birth certificate provides him with the rights to pursue the custody of and visitation with A.L. More specifically, La.R.S. 9:392.1 on Legitimation, La.R.S. 9:405 on Filiation (which contain identical text), and La.Civ.Code art. 196 provide as follows (emphasis added):

> § 392.1. Acknowledgment; obligation to support
>
> In child support, custody, and visitation cases, the acknowledgment of paternity *by authentic act* is deemed to be a legal finding of paternity and is sufficient to establish an obligation to support the child and to establish visitation without the necessity of obtaining a judgment of paternity.
>
> § 405. Legal effect of acknowledgment
>
> In child support, custody, and visitation cases, the acknowledgment of paternity *by authentic act* is deemed to be a legal finding of paternity and is sufficient to establish an obligation to support the child and to establish visitation without the necessity of obtaining a judgment of paternity.
>
> Art. 196. Formal acknowledgment; presumption
>
> A man may, *by authentic act or by signing the birth certificate*, acknowledge a child not filiated to another man. The acknowledgment creates a presumption that the

4

man who acknowledges the child is the father. The presumption can be invoked only on behalf of the child. Except as otherwise provided in custody, visitation, and child support cases, the acknowledgment does not create a presumption in favor of the man who acknowledges the child.

As indicated above, La.R.S. 9:392.1 and 9:405 pertain only to an acknowledgment by authentic act, while La.Civ.Code art. 196 includes an acknowledgment by the signing of the birth certificate. The latter is what occurred here. However, only the biological father may formally acknowledge an illegitimate child by having his name placed on the child's birth certificate. *See McKinley v. McKinley*, 25,365 (La.App. 2 Cir. 1/19/94), 631 So.2d 45 (no legal effect to acknowledgment by stepfather on birth certificate, though he was given custody as a non-parent due to best interest of child); *See also Succession of Robinson*, 94-2229 (La. 5/22/95), 654 So.2d 682 (acknowledgment in will by authentic act was in contravention of law and invalid if a biological relationship did not exist between decedent and the children).

In this case, Mr. Lange's acknowledgment of A.L. is not valid and is without legal effect. He admitted in the adjudication hearing that he was not the biological father of A.L. and that he had never had sexual relations with the mother of A.L. In *Robinson*, the court quoted the Planiol treatise on the precursor articles to La.Civ.Code art. 196 above:

> Under La.Civ.Code art. 203, an illegitimate child is acknowledged by a declaration executed before a notary public, in the presence of two witnesses, by the "mother" or "father." Although art. 203 does not expressly preclude executing an acknowledgment where no biological relationship exists, this conclusion is self-evident and definitional of an acknowledgment. An acknowledgment is an avowal emanating from the "mother" or "father" to establish maternal or paternal filiation. 1 M. Planiol, Treatise on the Civil Law § 1476 (La.St.L.Inst. transl. 1959). The word "filiation" describes the fact of biological

parentage. La.Civ.Code arts. 193-197. Thus, through the acknowledgment, the "mother" or "father" provides proof of maternal or paternal filiation, that is, biological parentage. Absent a biological relationship, the avowal is null. "A fact cannot be avowed when it has never existed." 1 Planiol[ at ] § 1490(2). If the acknowledgment is null, it produces no effects.

*Succession of Robinson*, 654 So.2d at 684.

## Judicial Estoppel

Mr. Lange further contends that the State should be precluded and judicially estopped from asserting that Mr. Lange is not the biological father of A.L. because of its actions in establishing the order of child support. Regrettably, we can provide Mr. Lange no relief through the vehicle of judicial estoppel.

In *Miller v. Conagra, Inc.,* 08-21 (La. 9/8/08), 991 So.2d 445, our Louisiana Supreme Court stated:

> [T]he Supreme Court of the United States has generally described judicial estoppel as an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 1814-15, 149 L.Ed.2d 968 (2001). Because it is an equitable doctrine, it is invoked at the court's discretion. *Id.* at 750, 121 S.Ct. at 1815.

*Miller*, 991 So.2d at 452.

In *New Hampshire v. Maine*, the United States Supreme Court articulated three non-exclusive but typically existing factors for determining whether judicial estoppel should apply:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards [v. Aetna Life Ins.*

*Co.]*, 690 F.2d [595], 599 (6th Cir. Mich., 1982). Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine,* 532 U.S. at 750-51, 121 S.Ct. at 1815 (some citations omitted).

In the present case, we do not find judicial estoppel in favor of Mr. Lange on the basis presented. The three most typical factors exist in his favor: (1) the State (DSS) is claiming that Mr. Lange's acknowledgment is invalid in order to deny custody and visitation, while the State (District Attorney) previously used the acknowledgment to obtain an order of child support against Mr. Lange. The State's current position is clearly inconsistent with its previous position; (2) the State previously persuaded the court to hear a Rule to set Child Support, and the court entered an order of child support against Mr. Lange, finding that he had a legal obligation to support "his" minor child; (3) Mr. Lange will not derive an unfair advantage by estoppel, or impose an unfair detriment on the State, because he is merely seeking custody of the child that he is already supporting.[2]

However, in this case, an additional factor under *New Hampshire* informs our decision in determining the propriety of estoppel. Our decision not to apply judicial estoppel to preclude the DSS from arguing an invalid acknowledgment

---

[2]Mr. Lange has not, at least in the proceedings before us, legally contested the child support order.

is based upon the fact that, even prior to the order of child support, Mr. Lange himself invalidated his acknowledgment by admitting in open court, in March 2008, that he was not the biological father of A.L. We cannot stop the State from asserting a truth that Mr. Lange had already judicially confessed.[3]

Now having said that, we strongly admonish our State agencies for using the courts to obtain blatantly inconsistent orders and to create inequities against a party who, though uninformed of appropriate procedure, sought with his long-term partner to do what they and the family of the child thought was in the best interest of the child. That best interest was to rear A.L. with his half sibling (and two other older children being successfully raised by Mr. Lange) and to keep other family connections alive. This may or may not have been in the best interest of the child, depending upon the family connections at issue, but it certainly deserved investigation under the circumstances.[4] If exigencies existed that prevented an investigation, such as the time that it would have taken to get Mr. Lange certified or qualified, then at the very least the DDS and the District Attorney should have communicated with each other and prevented the issuance of an order of child support against a non-parent who had no legal obligations toward the child. This is particularly egregious since Mr. Lange had been excused from all further proceedings involving A.L. *at the request of the State* and had indicated "concerns over his (Mr. Lange's) actual paternity of the child" the day after A.L. was born and again in the Judgment of Adjudication.

---

[3]This finding does not negate or vitiate other avenues of pursuing custody in the future as a *non-parent*, as in *Mckinley v. McKinley,* 631 So.2d 45, by fully arguing and presenting evidence of the best interest of the child, which was not done herein.

[4]It certainly appears that Mr. Lange's best intentions for this child have been demonstrated in that he did not appeal the order of child support against him, apparently because he has concerns that the foster parents cannot afford the care of the child.

At the oral argument of this matter, the DSS indicated that it did not know what the District Attorney's office was doing in getting an order of child support against Mr. Lange. We find this inexcusable. The order itself indicates that the child support payments are to be mailed to the designated Post Office box of the DSS. Therefore, these agencies cannot pretend to be without knowledge of each other's inconsistent actions.

IV.

## <u>CONCLUSION</u>

Based upon the foregoing, we must affirm the denial of Mr. Lange's petition to establish custody, as he initially used an inappropriate vehicle (false acknowledgment) to seek custody and visitation.

**AFFIRMED.**