# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #053

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of December, 2018**, are as follows:

**BY WEIMER, J.**:

2018-C-0320     ELIZABETH WEBB v. DANIEL ANDREW WEBB (Parish of Jefferson)
The appellate court's ruling that Mr. Webb's fraudulent loan is a community obligation and that Mrs. Webb owes reimbursement for prior payments is hereby reversed.  The trial court's ruling, which denied Mr. Webb's reimbursement claims for the fraudulent loan and found that loan to be Mr. Webb's separate obligation, is hereby reinstated.  Other aspects of the lower courts' rulings are not presently before this court and we express no view on them.

REVERSED IN PART; TRIAL COURT RULING REINSTATED.

GUIDRY, J., concurs in the result.
HUGHES, J., dissents and would affirm the court of appeal.
CRICHTON, J., concurs in the result and assigns reasons.
GENOVESE,J., concurs in part, dissents in part, and assigns reasons.

# SUPREME COURT OF LOUISIANA

### No. 2018-C-0320

### ELIZABETH WEBB

### VERSUS

### DANIEL ANDREW WEBB

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON*

**WEIMER**, Justice

This case concerns a post-divorce community property partition. The former husband, Daniel Webb, filed a claim for reimbursement and for the classification of a promissory note of $250,000 as a community obligation. The promissory note corresponds to a loan secured by a mortgage on the family home. Mr. Webb contended that Mrs. Webb owed reimbursement for loan payments and that the loan should be considered a community obligation because he borrowed the money to pay community debts.

This loan has a pernicious history. Mr. Webb, who is an attorney licensed to practice law in Louisiana, admitted that he caused a forged signature for Mrs. Webb to be placed on the loan documents and that he concealed the existence of the loan and the mortgage on the family home from Mrs. Webb.

Mr. Webb's forgery was eventually discovered, and formal attorney disciplinary charges were brought against him. In the ensuing disciplinary proceedings, Mr. Webb admitted his misconduct, but represented to this court that he

was taking "sole financial responsibility" and "full responsibility" for the loan and was otherwise committed to "making right" what he had done. Mr. Webb consented to being professionally disciplined by this court, but he prayed for leniency, citing his "[t]imely good faith effort to rectify consequences of misconduct." This court responded to Mr. Webb's petition for consent discipline by imposing a fully-deferred six-month suspension.

Shortly after this court's disciplinary order was issued, Mr. Webb returned to the district court where the community property partition was pending. There, Mr. Webb claimed that, although he personally incurred the $250,000 debt, responsibility for the loan should be an obligation shared by both Mr. and Mrs. Webb, rather than solely by Mr. Webb.

The district court rejected Mr. Webb's claim, finding that Mr. Webb's representations to this court in his attorney discipline case amounted to a judicial confession that he alone was responsible for the debt. Mr. Webb appealed, and the appellate court ruled in his favor by classifying the loan as a community obligation and ordering Mrs. Webb to personally reimburse Mr. Webb for loan payments he made after the community property regime was terminated.

Mrs. Webb sought this court's review of the appellate court's ruling. We granted certiorari to determine whether Mr. Webb's representations to this court in his attorney disciplinary case precluded him from shifting any financial responsibility for the loan to Mrs. Webb or to the Webbs' former community property. Finding that Mr. Webb represented to this court in his disciplinary case that Mrs. Webb would suffer no financial harm from his fraudulent loan for which he took "full responsibility," we further find the doctrine of judicial estoppel is appropriate for analyzing these unique circumstances. Applying the doctrine of judicial estoppel,

2

which serves to prevent a party from manipulating the court system, we hold that, in the community property litigation, Mr. Webb cannot shift to the position of a creditor as to Mrs. Webb or to the Webbs' former community property for his fraudulent loan–a position which is contrary to the position of "sole financial responsibility" for the loan that he previously expressed to this court.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this matter and a prior disciplinary proceeding are intertwined. Accordingly, we begin our review of the record there.

On December 12, 2011, while an attorney licensed to practice law in this state, Mr. Webb executed a loan for $250,000. It is presently undisputed that the proceeds of the loan were used for purposes that would be considered community debts, such as tax liabilities and a payment on their daughter's wedding reception.

To secure the loan, Mr. Webb executed a home equity mortgage on the family home. He obtained the loan and mortgaged the family home without Mrs. Webb's knowledge. More to the point, Mr. Webb actively concealed all of this from Mrs. Webb, going so far as to arrange for Mrs. Webb's signature to be forged on the mortgage documents and causing that forgery to be notarized. Mr. Webb also indicated on the loan documents that correspondences regarding the loan should be sent to his law office. However, the lending bank apparently overlooked Mr. Webb's efforts to change the correspondence address and, about a month after Mr. Webb obtained the loan, the bank mailed copies of the documents to the Webb family home. Mrs. Webb opened the mail from the bank and discovered the existence of the $250,000 loan, the mortgage on the family home, and observed that her signature had been forged on the mortgage documents.

3

Mrs. Webb confronted Mr. Webb about the mortgage documents. Mr. Webb admitted to forging Mrs. Webb's signature and also informed her of the existence of an unsecured loan of $120,000 and lines of credit of $50,000 and $75,000 of which Mrs. Webb was previously unaware. In the wake of these revelations, Mrs. Webb filed for divorce and a community property partition, and also filed an attorney misconduct complaint with the Office of Disciplinary Counsel (ODC).

The ODC opened an investigation into the allegations that Mr. Webb had forged the mortgage documents. Through counsel, Mr. Webb admitted Mrs. Webb's allegations were "essentially correct." In this written response dated July 12, 2012, Mr. Webb explained that he asked his secretary to sign Mrs. Webb's name on the mortgage and presented the forged document to his law partner for notarization. Mr. Webb agreed with Mrs. Webb's characterization that he forged the mortgage because Mrs. Webb would not have agreed to the loan. Mr. Webb characterized his actions as a one time "lapse in judgment" which he "deeply and sincerely regrets." Mr. Webb committed to "make it right." He elaborated: "As to 'making it right,' Mr. Webb has been actively working with the lender to renegotiate the loan, cancel the home equity mortgage, and to remove his wife from any possible personal exposure associated with the underlying loan." Mr. Webb further indicated that he "has been making the payments on the note" and reiterated that: "once again he accepts full responsibility for it." Mr. Webb also acknowledged that "he faces some level of discipline as a result of his actions," and he expressed a desire to explore consent discipline.

Indeed, by letter dated July 27, 2012, Mr. Webb submitted to the ODC an extensive proposal for consent discipline. Just as before, when describing the fraudulent loan, Mr. Webb "accepts responsibility for it." When urging that mitigating factors justified a public reprimand, Mr. Webb added: "Further, neither his

wife nor any financial institution has suffered any financial loss as a result of his conduct. … While he cannot undo what he did, he can and does acknowledge his conduct, accept responsibility for it, and express his deep remorse." When proposing probation as an alternative, Mr. Webb referenced his first admissions to the ODC and stated: "As noted in our letter dated July 12, 2012, Mr. Webb has taken measures to cancel the home equity mortgage in question and to accept sole financial responsibility for the loan amount."

During the course of the ODC's investigation, the ODC obtained a request for extension to file federal income taxes submitted on behalf of Mr. and Mrs. Webb, but Mrs. Webb's signature was also forged on that document. Mr. Webb admitted to the ODC that he was responsible for that forgery as well. Mr. Webb contended that, just as he was afraid to tell his wife about the need for the $250,000 loan, he "feared his wife's reaction when he learned in October, 2011, that their tax bill for the year 2010 would be higher than expected." The fraudulent loan, Mr. Webb explained, was in part used to pay the 2010 tax liability, and "there have been no issues raised regarding the tax return itself." To ODC's inquiry whether Mr. Webb had forged any other documents, Mr. Webb "advise[d] he [was] not aware of any other documents containing a signature purporting to be that of Mrs. Webb which he knows to be false."

The ODC apparently determined it had ascertained the full scope of Mr. Webb's misconduct, and reached an agreement with Mr. Webb to submit a joint petition for consent discipline to this court. All of the foregoing representations by Mr. Webb were among the exhibits to the "Joint Petition for Consent Discipline Pursuant to Rule XIX, § 20" submitted by ODC and personally signed by Mr. Webb. Moreover, the Joint Petition described that "[a]ll relevant facts … are set forth in the

5

Joint Stipulation of Facts accompanying this petition, <u>and more fully reflected in the exhibits submitted herewith</u>." (Emphasis added.)

This court accepted the petition for consent discipline on December 6, 2013, and issued to Mr. Webb a six-month suspension, but that suspension was fully deferred. **In re Webb**, 13-2583 (La. 12/06/13), 129 So.3d 526.

Several weeks later, on December 30, 2013, Mr. Webb filed a motion for summary judgment in the community property case, seeking to characterize the fraudulent loan, not as his sole obligation to repay, but an obligation for which the community was responsible. Alternatively, Mr. Webb claimed that if the obligation to repay the loan was solely his, he was owed reimbursement for using the loan proceeds for community debts. The trial court deferred ruling on these issues until a trial on the merits. However, on February 14, 2014, the trial court issued a partial summary judgment in favor of Mrs. Webb, finding that she was not bound by the mortgage on the ground that she did not consent to the loan, but the trial court made no ruling as to whether Mrs. Webb had any liability on the underlying debt.

After a trial, the trial court issued a community property partition judgment, which denied Mr. Webb's reimbursement claims for the fraudulent loan and found that loan to be Mr. Webb's separate obligation. The trial court's ruling stated "that First NBC Account … debt … in the amount of $244,356.92 is the separate debt of Daniel Webb. Accordingly, Daniel Webb shall assume full responsibility for the above described debt and remove the liability that it may have to Elizabeth Webb personally."

In written reasons for judgment, the trial court explained:

> La. C.C. art. 1853 provides that "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial

6

confession is indivisible and it may be revoked only on the ground of error of fact." In the Louisiana Supreme Court disciplinary proceedings against him, Mr. Webb through his counsel made declarations which establish that he assumed the First NBC loan as his separate obligation.

The Joint Stipulation filed in the Louisiana Supreme Court disciplinary proceedings against Mr. Webb states that he has taken appropriate steps to try and have the mortgage transferred into his name alone. The Louisiana Supreme Court found as a mitigating factor Mr. Webb's "good faith effort to rectify the consequences of his conduct." The Court finds that the First NBC loan is a separate obligation of Daniel Webb in the amount of $244,356.92.

Mr. Webb filed a motion for new trial on this issue. The trial court denied Mr. Webb's motion. Mr. Webb then appealed.[1]

The appellate court reversed the trial court's judgment allocating the fraudulent loan as Mr. Webb's separate obligation. The appellate court ruled that "although obtained through fraudulent means," the $250,000 loan "is a community obligation." **Webb v. Webb**, 16-567, p. 19 (La.App. 5 Cir. 1/24/18), 238 So.3d 566, 580. Having found the fraudulent loan was a community obligation, the appellate court also ruled Mrs. Webb must reimburse Mr. Webb one half of the $21,216.64 that Mr. Webb paid toward the loan after the Webbs' community property regime was terminated.

This court granted Mrs. Webb's request for review of the correctness of the appellate court's ruling, which characterized the fraudulent loan as a community property obligation and ordered Mrs. Webb to reimburse half of Mr. Webb's post-termination payments toward the loan. **Webb v. Webb**, 18-0320 (La. 4/27/18), 247 So.3d 113.

## LAW AND ANALYSIS

When, as here, former spouses do not reach a voluntary partition, an action to partition property following the termination of the community property regime is

---

[1] Mrs. Webb answered the appeal. The issues raised in her answer are not presently before this court.

governed by La. R.S. 9:2801. In pertinent part, the partitioning court is governed by the following statutory procedure:

> The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.

La. R.S. 9:2801(A)(4)(c).

It is well-established that the partitioning court is granted much discretion under La. R.S. 9:2801 in allocating assets and liabilities. See, e.g., **Hoover v. Hoover**, 10-1245, p. 3 (La.App. 1 Cir. 3/17/11), 62 So.3d 765, 767; **McDaniel v. McDaniel**, 35,833, p. 5 (La.App. 2 Cir. 4/3/02), 813 So.2d 1232, 1235; **Keenan v. Keenan**, 15-828, p. 5 (La.App. 3 Cir. 2/3/16), 186 So.3d 289, 295; **Robeaux v. Robeaux**, 13-0404, p. 4 (La.App. 4 Cir. 11/6/13), 129 So.3d 659, 664; **Goines v. Goines**, 09-994, p. 4 (La.App. 5 Cir. 3/9/11), 62 So.3d 193, 198. However, "[q]uestions of law are reviewed *de novo*, without deference to the legal conclusions of the tribunals below." **Snider v. Louisiana Med. Mut. Ins. Co.**, 13-0579, p. 6 (La. 12/10/13), 130 So.3d 922, 928.

Here, relying on **Kaufmann v. Corp. Realty, Inc.**, 99-1104 (La.App. 5 Cir. 4/12/00), 759 So.2d 969, 974, the appellate court reasoned that because Mr. Webb's statements in his disciplinary case were made in a separate proceeding, they are "extrajudicial confessions or admissions." The appellate court further drew from **Kaufman**, explaining that statements in a separate proceeding:

> are evidence, but they do not create conclusive presumptions or operate as an estoppel against the party making them. The only instance where an extrajudicial confession will operate as an estoppel against the party

8

making it is if the party claiming the benefit of the estoppel was deceived by the admission or relied on it to his prejudice.

**Webb**, 16-567 at 16, 238 So.3d at 578 (quoting **Kaufman**, 759 So.2d at 974).

The appellate court then disagreed with the trial court, which found Mr. Webb's statements in his disciplinary case about taking "full responsibility" for the fraudulent loan to be judicial confessions under La. C.C. art. 1853. Turning to the principles it drew from **Kaufman**, the appellate court acknowledged Mr. Webb's statements in the disciplinary case "can be considered as probative evidence in any subsequent proceeding. Nevertheless, while the statements can be considered, they cannot change the classification of the underlying debt unless, essentially, Mrs. Webb can prove that she relied on those statements." **Webb**, 16-567 at 16-17, 238 So.3d at 578.

The appellate court's reliance on **Kaufman** as a framework for resolving this case is misplaced for two reasons. First, the appellate court overlooked that the larger question in **Kaufman** was not simply whether "judicial confessions" had been proven, but whether "the principle of judicial estoppel is … applicable." **Kaufman**, 99-1104 at 10, 759 So.2d at 975 (emphasis added). Second, the appellate court overlooked more recent and more authoritative pronouncements on judicial estoppel.

Specifically, this court has unanimously observed that "judicial estoppel [is] an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." **Miller v. Conagra, Inc.**, 08-0021, p. 9 (La. 9/8/08), 991 So.2d 445, 452 (citing **New Hampshire v. Maine**, 532 U.S. 742, 749-50 (2001)). In **Miller**, a livestock producer omitted potential lawsuit claims as an asset from the livestock producer's earlier bankruptcy case. After gaining a bankruptcy discharge, the

9

livestock producer litigated claims stemming from a breach of contract that occurred before the livestock producer had filed for bankruptcy protection. The livestock producer obtained a trial court judgment of over two million dollars. This court granted the defendant's writ application to review whether the livestock producer's claims should have been barred by the doctrine of judicial estoppel because the livestock producer shifted his litigation positions by asserting in his bankruptcy case that he had no potential lawsuit assets, but later urging the defendant was liable for a pre-bankruptcy breach of contract. In that context, this court observed there are three elements for establishing judicial estoppel: "(1) the party's position must be clearly inconsistent with a previous one, (2) the court must have accepted the previous position, and (3) the non-disclosure of an asset must not have been inadvertent." *Id.* at 453.

Before turning to the application of those elements in this case, some procedural points bear mention. In **Miller**, we remarked that "the defense of judicial estoppel should be raised in a timely filed answer." **Miller**, 08-0021 at 9, 991 So.2d at 452. However, the remark just quoted about pleading judicial estoppel in an answer is inapposite to the procedural posture of this action for partitioning community property, which was incidental to the main action of a divorce. See La. C.C. art. 105. As permitted by Article 105, Mrs. Webb prayed for a partition in her petition for divorce. [Rec. p. 8] Mr. Webb's response included filing a motion for summary judgment, seeking to have the fraudulent loan characterized as a community debt when the court would later partition the community property.

In her opposition to Mr. Webb's motion, Mrs. Webb urged that summary judgment should be denied because Mr. Webb had taken inconsistent litigation positions regarding the responsibility for the loan. Specifically, Mrs. Webb

10

contended, "before the Supreme Court Dan Webb represented that the underlying debt was his separate debt, but before this Court Dan Webb now represents that the underlying debt should be a community debt." The trial court denied Mr. Webb's motion, explaining that "based on Mr. Webb's representations to the Louisiana Supreme Court regarding his intent to accept full responsibility for the FNBC loan, the Court finds that genuine issues of material fact exists as to whether this loan is a community obligation or Mr. Webb's separate obligation."

With the denial of Mr. Webb's motion to characterize the fraudulent loan as a community debt, that issue was submitted as part of a community property partition trial. A major portion of Mrs. Webb's trial strategy was geared toward showing Mr. Webb had taken shifting, and inconsistent, litigation positions. The record from this court's attorney disciplinary proceedings for Mr. Webb was admitted into evidence at the community partition trial, during which the parties greatly debated the significance of Mr. Webb's representations to this court. As Mrs. Webb summarized in her post-trial memorandum:

> Regardless of the legal semantics engaged at trial by Mr. Webb, an attorney, no interpretation can be inferred by "full responsibility" and "sole responsibility" other than that to the Supreme Court Mr. Webb assumed the obligation as his separate debt. Any attempts now to classify the underlying debt to the fraudulent mortgage as a community obligation is inconsistent with "full responsibility" and "sole responsibility" as it would have a negative monetary effect on Mrs. Webb resulting in a reduction in her share of the community, contrary to what was represented to the Supreme Court by or on behalf of Mr. Webb in order to mitigate his discipline.

Accordingly, we find the record reflects that ample information was adduced at trial for us to determine whether the doctrine of judicial estoppel should apply. Parenthetically, we also note that this court could apply judicial estoppel as the legal predicate for the peremptory exception of no right of action, an exception which this

court is permitted to raise *sua sponte*, with or without a full trial.  See La. C.C.P. art. 927(B) ("the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, or discharge in bankruptcy, may be noticed by either the trial or appellate court on its own motion.").

Having established that the procedural groundwork has been laid for the doctrine of judicial estoppel in this case, but has not been fully considered by the lower courts, we turn to the applicability of each element of judicial estoppel *de novo*. See **Evans v. Lungrin**, 97-0541, p. 7 (La. 2/6/98), 708 So.2d 731, 735.

Whether Litigation Positions are Inconsistent

The first element for applying judicial estoppel, as noted above, is that "the party's position must be clearly inconsistent with a previous one." **Miller**, 08-0021 at 9, 991 So.2d at 452.  In the instant case, Mr. Webb has taken the position that he is entitled to claim from Mrs. Webb reimbursement for half the amount of loan payments after the community property regime was terminated and that the liability for the loan itself is a community obligation–all to the detriment of Mrs. Webb's interest in the community's assets.  The question thus becomes whether Mr. Webb, in his attorney disciplinary case, represented otherwise, *i.e.*, that Mrs. Webb would not suffer detrimental financial consequences from Mr. Webb's fraudulent loan.

Earlier, we observed in the record of the disciplinary case several instances where Mr. Webb told this court he took "full responsibility" for the loan.  At the risk of stating the obvious, Mr. Webb did not represent to this court that he was only willing to take "half responsibility," which is essentially his position toward his fraudulent loan in the present case.

However, in his brief in the instant case, Mr. Webb points to a stipulation submitted to this court and claims that it is tantamount to putting this court on notice

that he might later seek half of the loan balance from Mrs. Webb and/or from the community property in which Mrs. Webb held an interest. The stipulation stated:

> The Respondent [Mr. Webb] has since verified that the home equity mortgage was obtained solely for the purpose of paying community debts incurred prior to the filing of the divorce petition and this was a private transaction that did not involve the submission of any documents to a court of law. The Respondent has further verified that he has taken appropriate steps to try and have the mortgage transferred into his name, alone; even though he maintains that the underlying debts were incurred for the benefit of the community. <u>The final determination of these property issues remains pending in the 24th Judicial District Court at the present time</u>. The Respondent maintains no harm to Mrs. Webb resulted from his actions. [Emphasis added.]

Mr. Webb points to the underlined language in support of his argument that he reserved the right to later seek to have the loan declared a community obligation. However, and setting aside for a moment the context of other stipulations, the sentence immediately preceding the underlined sentence defeats Mr. Webb's present argument. In the preceding sentence, Mr. Webb describes his efforts to transfer a loan that was fraudulently made in the name of both Mr. and Mrs. Webb, "into his name alone," and avers that he took these efforts "even though he maintains the underlying debts were incurred for the benefit of the community."

To parse the meaning of these two sentences, we note that the first sentence describes *actions* Mr. Webb is undertaking to rectify his fraud. The second sentence, which is the underlined sentence above, does not describe any action or even any intent on Mr. Webb's part. In an attorney disciplinary case, in which the attorney's actions usually speak louder than words, it is a relatively straightforward matter for us to interpret the sentence containing Mr. Webb's *actions* as the focal point of his stipulated position, and to construe the sentence that follows (which we have underlined) as merely containing context and providing information. To restate these representations, we find Mr. Webb undertook responsibility for the fraudulent loan

(the *action* sentence), even though the trial court had yet to impose any separate responsibility upon him (the underlined sentence).

Although we read Mr. Webb's stipulation quoted above as taking sole responsibility for the loan, when that stipulation is read in the context of Mr. Webb's other stipulations, that conclusion is all the more compelling. Each instance where Mr. Webb indicated to the ODC he was undertaking "full responsibility" and "sole financial responsibility" for the fraudulent loan and demonstrating a commitment to "make it right," was submitted as a stipulation of fact to this court: "All relevant facts pertaining to this matter are set forth in the Joint Stipulation of Facts accompanying this petition, and more fully reflected in the exhibits submitted herewith." (Joint Petition for Consent Discipline Pursuant to Rule XIX, § 20). Mr. Webb personally signed this representation.

One of Mr. Webb's stipulations is especially noteworthy. When urging that mitigating factors justified leniency toward him, Mr. Webb stipulated: "Further, neither his wife nor any financial institution has suffered any financial loss as a result of his conduct. … While he cannot undo what he did, he can and does acknowledge his conduct, accept responsibility for it, and express his deep remorse."

The importance of the stipulation just quoted stems from Mr. Webb indicating–there and elsewhere–the bank will suffer no loss from his fraud because he has committed to paying the loan. However, it is significant that in this stipulation Mr. Webb is placing his wife on par with the bank as not suffering any financial loss from the loan. That representation can only be true if Mr. Webb is representing to this court that she truly will bear no responsibility. While Mr. Webb indicates in his brief that the community already owed money which was paid from the fraudulent loan and, hence, he tacitly suggests his fraud was a financial benefit for the

14

community, Mr. Webb's present position is inconsistent with his prior representation to this court in his disciplinary case that he "express[es] his deep remorse" for the fraud.

In sum, we find inconsistent positions have been taken regarding the fraudulent loan. In the attorney disciplinary case, it was represented to this court that Mr. Webb took "sole financial responsibility" and "full responsibility" for the loan and, like the bank, Mrs. Webb would suffer no financial detriment from the loan. However, in the community property partition, it was represented he was taking only half responsibility for the loan.

Whether This Court Accepted the Previous Position

Mrs. Webb contends that a fully deferred suspension was a lenient sanction for Mr. Webb's misconduct, which involved a forgery of loan and tax documents. Mrs. Webb points to harsher sanctions in other attorney misconduct cases to demonstrate that this court accepted Mr. Webb's "full responsibility" and "sole financial responsibility" for the loan as a reason for fully deferring suspension, which allowed Mr. Webb to continue to practice law during his suspension.

We find it neither necessary nor helpful to compare Mr. Webb's sanction to other cases at this juncture. Every case is unique, and such a comparison is more appropriate when imposing discipline in consent cases. See La. Sup. Ct. Rule XIX, § 20(B) (requiring petitions for consent discipline to be accompanied by a memorandum that *inter alia* addresses "prior jurisprudence which establishes a similar range of sanctions for similar misconduct."). Suffice it to say that when we indicated in our order of discipline for Mr. Webb that we both "reviewed" and "accepted" Mr. Webb's petition, we meant what we said. As required by Sup. Ct. Rule XIX, § 20(A), Mr. Webb's stipulations of fact were included with his petition,

15

which was filed jointly with the ODC. As described in the petition, the stipulations of fact extended to Mr. Webb's correspondences with the ODC, which were submitted as exhibits to the petition. By operation of Rule XIX, § 20(E), once we accepted Mr. Webb's joint petition, "the entire record," including Mr. Webb's stipulations, which were confidential until that point, "bec[a]me public." In contrast, if we had rejected Mr. Webb's joint petition, his petition along with his stipulations would have remained confidential pursuant to La. Sup. Ct. Rule XIX, § 20(F) ("The joint motion shall remain sealed and shall not be disclosed or made available for use in any other proceeding except upon order of the Court."). Thus, our acceptance of Mr. Webb's stipulations allowed the present and very public debate as to their significance, a debate which would never have occurred if we had rejected Mr. Webb's stipulations.

To recap our review of the second element of judicial estoppel, as part of his petition for consent discipline, Mr. Webb made numerous stipulations regarding his "full responsibility" and "sole financial responsibility" for the fraudulent loan. As indicated in our ruling, we "reviewed" and "accepted" those stipulations and thereby intended for Mr. Webb to honor them.

Whether the Prior Position was Inadvertent

In **Miller**, we addressed the significance of non-disclosure of potential litigation as an asset in a bankruptcy case. **Miller**, 08-0021 at 9, 991 So.2d at 452. Reviewing other bankruptcy cases dealing with non-disclosure of potential litigation assets, we identified as a third element of judicial estoppel that the litigant's non-disclosure was not inadvertent. *Id.* Even though the instant case does not deal with bankruptcy, for thoroughness of analysis, we address the inadvertence element.

Given that the instant case concerns affirmative representations (rather than omissions examined in the bankruptcy jurisprudence), and that Mr. Webb's representations were numerous, were made with advice of counsel and Mr. Webb himself is also an attorney, we find there is no question that Mr. Webb's representations in the disciplinary case were not inadvertent, but intentional.

Application of Judicial Estoppel

Although we have found all elements met, that does not end our inquiry. In **Miller**, we observed: "We are reminded of the Supreme Court's caution against reducing judicial estoppel to a general formulation or principle, as well as the Court's recognition that specific factual contexts may give rise to additional considerations." **Miller**, 08-0021 at 11, 991 So.2d at 453 (citing **New Hampshire**, 532 U.S. at 750-51). "In fact, the **New Hampshire** Court ultimately looked to equity to resolve its judicial estoppel question." ***Id.***

In **Miller**, all three elements for applying judicial estoppel were met, but we found "the equities in this case weigh against applying judicial estoppel." ***Id.*** Specifically, the equities dissuading us from applying judicial estoppel were harms to third-parties: "[I]t is clear that Miller's creditors will be harmed if we bar Miller's claim." ***Id.***, 08-0021 at 12, 991 So.2d at 454.

In the instant case, the equities weigh in favor of estopping Mr. Webb's claims for reimbursement and characterization of his fraudulent loan as a community property obligation. Unlike **Miller**, there are no third parties impacted by estopping Mr. Webb's claim. Significantly, because the instant case involves a judicial partition of community property under La. R.S. 9:2801(A)(4)(c), that statute itself invites equitable considerations: "The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that

the court deems relevant." (Emphasis added.) See also **Hare v. Hodgins**, 586 So.2d 118, 127 (La. 1991) ("In fact, La. R.S. 9:2801, which was enacted subsequent to **Sims** [**v. Sims**, 358 So.2d 919 (La. 1978)] affords the partitioning tribunal a great deal of flexibility and clearly implies that the goals of equality and equity require that no one method should be used to the exclusion of other apportionment techniques.").

In this case, the following equitable concerns loom large. The doctrine of judicial estoppel "is designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." **Miller**, 08-0021 at 9, 991 So.2d at 452 (citing **New Hampshire**, 532 U.S. at 749-50). Recalling that Mr. Webb's misconduct consisted of forging a mortgage document that would be inscribed in the public records, we find it all the more important to hold him to his prior representations of making amends by accepting "sole financial responsibility" and "full responsibility" for his misconduct. Mr. Webb is trained in the law, and a significant purpose of any attorney discipline case is to reinforce the expectation that the attorney will conform to "high standards of conduct." See **Louisiana State Bar Ass'n v. Reis**, 513 So.2d 1173, 1177 (La. 1987). To allow Mr. Webb to now retreat from his representations in a case in which he petitioned for lenient discipline and to shift positions in the community property case, would amount to a "perversion of the judicial process" and "playing fast and loose with the courts." **Ghassemi v. Ghassemi**, 11-1771, pp. 6-7 (La.App. 1 Cir. 6/8/12), 103 So.3d 401, 405 (citing **Lowman v. Merrick**, 06-0921 (La.App. 1 Cir. 3/23/07), 960 So.2d 84, 92). The doctrine of judicial estoppel exists to prevent such injustices.

**CONCLUSION**

Faced with the unusual facts of this case, the lower courts did not identify the legal construct best suited for the proper analysis. The trial court focused on whether Mr. Webb's statements in his attorney disciplinary case amounted to judicial confessions under La. C.C. art. 1853, which primarily deals with the evidentiary value of a litigant's prior positions, inasmuch as Article 1853 indicates that a judicial confession "constitutes full proof against the party who made it." The appellate court also examined this case through the lens of La. C.C. art. 1853, but relied on an earlier appellate decision, **Kaufman**, which alluded to the larger question of whether judicial estoppel applied, but which predated the current views of this court and of the United States Supreme Court on judicial estoppel.

With its emphasis on protecting the courts from manipulation, the doctrine of judicial estoppel is appropriate for resolving this case. Mr. Webb represented to this court in his disciplinary proceeding that he took "sole financial responsibility" and "full responsibility" for his fraudulent loan, but in the present community property case, he essentially changed his position to accept only "half responsibility." Applying the doctrine of judicial estoppel, we hold Mr. Webb to the "sole financial responsibility" and "full responsibility" position he expressed to this court, and rule that he is estopped from having his fraudulent loan characterized as a community property obligation or otherwise being a creditor relative to Mrs. Webb, or to the community for the loan proceeds and/or for any loan payments he has made.

Although this is the first instance in which this court has applied judicial estoppel based on an attorney disciplinary case, nothing in this opinion should be construed as an expansion of that doctrine. This case required an examination of what this court intended when accepting a petition for consent discipline and, although we ultimately agree with the district court that Mr. Webb is accountable for

his representations to this court, this court is uniquely positioned to interpret its own intent when imposing attorney discipline. We are mindful that unscrupulous litigants may attempt to use the attorney disciplinary system to gain a litigation advantage. Rule 8.4(g) of the Rules of Professional Conduct prohibit attorneys from bringing ethical complaints solely to gain a litigation advantage, and thereby serves as one protection against using the attorney disciplinary system as a litigation tactic. We affirm that principle here, while at the same time noting that it was not breached here. Rather, this case turns on Mr. Webb's statements, which he must own and which could foreseeably have been made in another litigation context outside the attorney disciplinary system, such as a civil fraud action. Setting aside all the nuances of the three-factor legal test, our application of judicial estoppel simply enforces Mr. Webb's ownership of his prior statements to this court even after those statements no longer suit an outcome he desires.

**DECREE**

The appellate court's ruling that Mr. Webb's fraudulent loan is a community obligation and that Mrs. Webb owes reimbursement for prior payments is hereby reversed. The trial court's ruling, which denied Mr. Webb's reimbursement claims for the fraudulent loan and found that loan to be Mr. Webb's separate obligation, is hereby reinstated. Other aspects of the lower courts' rulings are not presently before this court and we express no view on them.

**REVERSED IN PART; TRIAL COURT RULING REINSTATED.**

**SUPREME COURT OF LOUISIANA**

**No. 2018-C-0320**

**ELIZABETH WEBB**

**VERSUS**

**DANIEL ANDREW WEBB**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON**

**GUIDRY, J.,** concurs in the result.

12/05/18

**SUPREME COURT OF LOUISIANA**

**No. 2018-C-0320**

**ELIZABETH WEBB**

**VERSUS**

**DANIEL ANDREW WEBB**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON**

Hughes, J., dissents and would affirm the court of appeal.

1

SUPREME COURT OF LOUISIANA

No. 2018-C-0320

ELIZABETH WEBB

VERSUS

DANIEL ANDREW WEBB

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

**CRICHTON, J., concurs in the result and assigns reasons**:

I agree with the plurality's reversal of the court of appeal and reinstatement of the trial court's ruling. I also concur with its analysis of Mr. Webb's statements made during his disciplinary proceeding and ultimate conclusion that Mr. Webb represented in that proceeding that Mrs. Webb would not suffer any personal liability or financial responsibility for Mr. Webb's fraudulent loan. However, I disagree with the remainder of the opinion's reasoning and its expansion, in my view, of the common law doctrine of judicial estoppel in Louisiana.

Despite claiming that "nothing in this opinion should be construed as an expansion of [judicial estoppel doctrine]", the test proposed by the plurality would expand the narrow version of that doctrine that had been previously accepted in Louisiana law. While perhaps seemingly innocuous in the application to the current facts, the plurality's interpretation of judicial estoppel would be a significant departure from this Court's historical position that "the common law doctrine of judicial estoppel does not apply in Louisiana." **Doyle v. State Farm (Mut.) Ins. Co.**, 414 So. 2d 763, 765 (La. 1982) (citing **Domak v. Lafayette General Hospital**,

1

399 So. 2d 168 (La. 1981); **Ugulano v. Allstate Insurance Company**, 367 So. 2d 6 (La. 1978)).

The plurality relies on one case where this Court nevertheless recognized and applied a special version of common law judicial estoppel in matters involving bankruptcy proceedings. **Miller v. Conagra, Inc.**, 08-0021 (La. 9/8/08), 991 So. 2d 445 (citing **In re: Superior Crewboats, Inc.**, 374 F.3d 330, 335 (5th Cir. 2004)). To appreciate the significance of the plurality's application of **Miller** to the case at hand, it is important to understand that **Miller** itself was an adaptation of the general principals of federal judicial estoppel to be applied specifically to matters involving representations made in prior bankruptcy proceedings.

In a "typical" scenario, the judicial estoppel factors set forth by the Supreme Court of the United States in **New Hampshire v. Maine**, cited by **Miller**, include:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. *A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.*

**New Hampshire v. Maine**, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (citations omitted) (emphasis added). This Court in **Miller**, following guidance of the U.S. Fifth Circuit Court of Appeal, adopted the first two elements of judicial estoppel set forth in **New Hampshire v. Maine** but changed the third factor to require that "the non-disclosure of an asset must not have been inadvertent". **Miller**, 991 So. 2d at 452.

Since the case at hand does not involve statements made by Mr. Webb in prior bankruptcy proceedings, by relying on **Miller** the plurality is forced to again adapt the third element of the test to require that the estopped litigant have made

2

representations that "were not inadvertent, but intentional." This new test proposed by the plurality would not only adopt the common law doctrine of judicial estoppel outside of the context of bankruptcy, which is in and of itself an expansion of that doctrine's application in Louisiana, but also would apply to a much larger cast of cases in which the litigant makes prior statements "intentionally."

If this Court desires to recognize the common law doctrine of judicial estoppel to the extent the plurality suggests, adaptation of **Miller** would be a particularly curious means of doing so. Assuming adoption of judicial estoppel doctrine is prudent, it might be more prudent to adopt the U.S. Supreme Court's test set forth therefore in **New Hampshire v. Maine** and not to create a new test that is in essence an adaptation of the U.S. Fifth Circuit's adaptation of common law judicial estoppel doctrine. The plurality does not explain its reasons for doing otherwise, and I am unable to conceive of any.

This Court has previously recognized that, while not accepted generally, the common law concept of judicial estoppel is most closely mirrored in Louisiana by the estoppel afforded judicial confessions pursuant to La. C.C. art. 1853. **Mitchell v. Bertolla**, 340 So. 2d 287, 289 (La. 1976). Even in the context of extra-judicial confessions, estoppel has been used by Louisiana courts where another party to a suit has detrimentally relied on an extra-judicial confessions of the estopped litigant. **See Alexis v. Metropolitan Life Ins. Co.**, 604 So. 2d 581 (La. 1992) ("The party who has made such an admission in a previous suit is not barred from denying the facts contained in that admission in a subsequent suit, *unless the adverse party has been prejudiced by his reliance upon that admission.*") (emphasis added).

I agree with the Court of Appeal's analysis finding that Mr. Webb's statements in his disciplinary proceeding are not judicial confessions but instead extra-judicial confessions upon which Mrs. Webb did not rely. Like the plurality, I believe that it is important to "enforce[] Mr. Webb's ownership of his prior

3

statements to this court even after those statements no longer suit an outcome he desires" despite the fact that the current law regarding extra-judicial confessions does not so provide. **Webb v. Webb**, 18-0320, p. 20 (La. 12/__/18), __ So. 3d __. Although this Court has previously permitted only one exception to a litigant's allowance under Louisiana law to change his stance from prior extra-judicial confessions, I would adopt an additional exception: that attorney-litigants be barred from denying the facts contained in an admission made in attorney disciplinary matters before this Court in a subsequent suit.

It is well-established in our jurisprudence that the purposes of disciplinary proceedings are to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. **Louisiana State Bar Ass'n v. Reis**, 513 So. 2d 1173 (La. 1987). The discipline we ultimately impose depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. **Louisiana State Bar Ass'n v. Whittington**, 49 So. 2d 520 (La. 1984). The testimony of the attorney subject to disciplinary proceedings is often critical to making these determinations, and the ability of this Court to "preserve the integrity of the profession" relies on the truthfulness and candor of the attorney. As such, even though extra-judicial confessions ordinarily do not bar litigants from denying admissions made in prior suits where reliance is absent, in my view an exception is warranted to protect the integrity of disciplinary proceedings. Mr. Webb's attempt to manipulate the disciplinary process to his advantage certainly illustrates this heightened need.

It is incumbent on this Court not only to consider the impact of our decisions on the facts before us but also to make every reasonable effort to ensure that the legal principles we espouse are not overbroad such that they have unforeseen and undesired effects. The distinction between the adaptation of common law judicial

4

estoppel proposed by the plurality and the limited exception to the preclusive effect of extra-judicial confessions I propose herein admittedly have equal application to the facts at hand. Nevertheless, I cannot embrace the plurality's reasoning, as it would unnecessarily and significantly expand an area of the law that this Court has historically hesitated to recognize.

SUPREME COURT OF LOUISIANA

No. 2018-C-0320

ELIZABETH WEBB

VERSUS

DANIEL ANDREW WEBB

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON**

**GENOVESE, J., concurs in part, dissents in part, and assigns reasons.**

In this matter, we are called upon to determine whether certain statements made by a party in connection with a lawyer disciplinary proceeding are binding on that party in parallel community property litigation. I find the district court failed to consider the evidence presented in this case under the proper standard and that this error interdicted the lowers courts' judgments.

My first disagreement with the majority opinion is its application of the common law doctrine of judicial estoppel under the facts in this case. Notwithstanding the case of *Miller v. Conagra, Inc.*, 08-0021 (La. 9/8/08), 991 So.2d 445, (citing *In re: Superior Crewboats, Inc.* 374 F.3d 330, 335 (5th Cir. 2004)), a bankruptcy proceeding (which is not the case herein), our jurisprudence has historically found that "the common law doctrine of judicial estoppel does not apply in Louisiana." *Doyle v. State Farm (Mut.) Ins. Co.*, 414 So.2d 763, 765 (La. 1982). Thus, I find this Court's opinion relying on the common law doctrine of judicial estoppel misplaced.

Next, the district court characterized the relevant statements made by the husband during the disciplinary proceedings as a "judicial confession." I find the

1

district court to be in error in this regard. "A judicial confession is a declaration made by a party in a judicial proceeding…." La. Civ. Code art. 1853. The jurisprudence has strictly and narrowly construed La. Civ. Code art. 1853. Disciplinary proceedings are "neither civil nor criminal but are *sui generis*." Louisiana Supreme Court Rule XIX, § 18(A); *In re Raspanti*, 08-0954, p. 8 (La. 3/17/09), 8 So.3d 526, 532, *cert. denied*, 558 U.S 991, 130 S.Ct. 495 (2009). Thus, a disciplinary proceeding cannot be deemed a judicial proceeding, and the husband's statements in said disciplinary proceeding cannot be deemed a judicial confession, thereby making La. Civ. Code art. 1853 inapplicable to the facts in this case. Consequently, the district court erred in relying on La. Civ. Code art. 1853 and in finding the husband's statements in the disciplinary proceeding to be a judicial confession.

Finally, because the district court erroneously relied on the judicial confession provisions of La. Civ. Code art. 1853, it did not give proper consideration to the evidence herein under the standard applicable to extra-judicial confessions, nor were the parties able to make a full record on this issue. I find this error interdicted the district court's factual findings with regard to the legal characterization of the FNBC loan. Thus, I concur in the majority opinion's reversal of the court of appeal, but dissent to its doing so on the grounds of judicial estoppel. Accordingly, I find it necessary to vacate the judgments of the lower courts and remand the case to the district court for a new hearing on the characterization of the FNBC loan with the application of the correct legal standard.

2