NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-707

DONALD HODGE, JR.

VERSUS

JARED OERTLING, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-4620
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, Chief Judge, Billy H. Ezell, and John E. Conery, Judges.

AFFIRMED.

**Donald Hodge, Jr.**
**Attorney at Law**
**4148 Palm Street**
**Baton Rouge, Louisiana  70808**
**(337) 794-8873**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Donald Hodge, Jr. As The  Administrator Of The Estate of Donald**
**Hodge, Sr.**

**Maurice L. Tynes**
**Attorney at Law**
**4839 Ihles Road**
**Lake Charles, Louisiana  70605**
**(337) 479-1173**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Jared Oertling**

**Jeffrey A. Carrier**
**Fuerst, Carrier & Ogden**
**127 West Broad Street, Suite 300**
**Lake Charles, Louisiana  70601**
**(337) 436-3332**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Jared Oertling**

**Steven William Usdin**
**John W. Joyce**
**Laurence D. Lesueur**
**Barrasso, Usdin, Kupperman Freeman & Sarver, L.L.C.**
**909 Poydras Street, Suite 2400**
**New Orleans, Louisiana  70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Vigilant Insurance Company**

**Pierce A. Rapin**
**Kourtney L. Kech**
**James Edward Sudduth III**
**Sudduth & Associates, LLC**
**1109 Pithon Street**
**Lake Charles, Louisiana  70601**
**(337) 480-0101**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Ken Begnaud**

**CONERY, Judge.**

This case comes before the court on an appeal by Donald Hodge, Jr., as the Administrator of the Estate of Donald Hodge, Sr., (Estate of Hodge, Sr.). The trial court's May 28th judgments granted summary judgment in favor of Vigilant Insurance Company (Vigilant) on the issue of coverage, and dismissed all claims made by the Estate of Mr. Hodge Sr. with prejudice. The trial court also granted summary judgment based on judicial estoppel in favor of Mr. Jared Oertling on all claims made by the Estate of Hodge, Sr., also dismissing all claims made by the Estate of Mr. Hodge, Sr., with prejudice. The trial court additionally granted a motion in limine filed by Mr. Oertling, and excluded the Estate of Hodge, Sr.'s expert, Mr. Jeffrey Campbell, based on lack of support for his Expert Report. It is from these two judgments that the Estate of Hodge Sr. now appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mr. Hodge, Sr. owned a fenced whitetail deer farm at 5890 River Road, in Calcasieu Parish, Louisiana. The farm was licensed by the Louisiana Department of Agriculture and Forestry (LDAF). Mr. Hodge, Sr. was in the business of selling and buying whitetail deer under the LDAF license, which required strict record-keeping of all sales and transfers of deer.

This case is based on a sale in early 2012 of whitetail deer transported from a whitetail deer farm in Pennsylvania under Mr. Hodge, Sr.'s license. Instead of transporting the whitetail deer in question to his farm in Calcasieu Parish, the whitetail deer in question, six does, were off loaded in Carencro, Louisiana, and transported to Mr. Jared Oertling's deer farm in Mississippi. This transaction was based on the sale of the whitetail deer from Mr. Hodge, Sr. to Mr. Oertling in

violation of the federal Lacey Act, which relates, in part, to the illegal transportation of wildlife. *See* 18 U.S.C. § 371; 16 U.S.C. §§ 3371-3378. There was no documentation or record of this transaction made at the time of the transfer in the records of Mr. Hodge, Sr.

After an inquiry from Pennsylvania about the whereabouts of the whitetail deer sold in the transaction in early 2012, on October 16, 2012, the LDAF quarantined Mr. Hodge, Sr.'s whitetail deer farm. The quarantine was imposed due to the possibility that the whitetail deer in question may have been exposed to Chronic Wasting Disease (CWD). CWD is a contagious prion disease found in whitetail deer. Prion is a protein particle believed to be the cause of brain disease. Symptoms of CDW include long term weight loss, with loss of body conditioning, as well as increased drinking and urination.

Tragically, Mr. Hodge, Sr., lost his life in a hunting accident on or about the day the LDAF imposed its quarantine on his whitetail deer farm. Mr. Hodge, Sr. had no knowledge of the quarantine. His son Donald Hodge, Jr., was not involved in the operation of his father's business. A subsequent LDAF investigation into the operation of the whitetail deer farm owned by Mr. Hodge, Sr., revealed he had failed to keep the legally required records for the whitetail deer he sold or transferred to others.

Donald Hodge, Jr., individually and as the administrator of the Estate of Hodge, Sr., and his sister, Rachael Hodge, filed suit on March 20, 2013 against the LDAF in the 14th Judicial District Court. Their petition sought to lift the injunction maintaining the quarantine. Mr. Hodge, Jr., swore in verified pleadings that the whitetail deer inside the enclosure at the Hodge farm posed no CWD transmission risk. Mr. Hodge, Jr. further stated in the petition that LDAF had no

reason to believe the six does ever reached the Hodge Farm, since they were delivered to Mr. Oertling at his deer farm in Mississippi, which Mr. Oertling had admitted.

Despite this admission from Mr. Oertling, the LDAF vigorously opposed the lifting of the quarantine. In a sworn affidavit filed by the defense, the LDAF Assistant Commissioner testified that "… investigation indicated that the deer farm was likely involved in an illegal deer-smuggling operation," which compelled the quarantine, along with the discovery of legally insufficient records kept by Mr. Hodge, Sr. The LDAF required that all the deer tags on the Hodge Farm be scanned at the Hodges' expense to ensure none of the deer came from Pennsylvania. The ongoing quarantine prevented the Estate of Hodge, Sr., from putting the farm up for sale and required the Estate to sustain the farm at its expense. The plaintiff's also claimed damages from the LDAF allegedly suffered due to the quarantine.

On October 15, 2013, Donald Hodge, Jr., as Administrator of the Estate of Donald Hodge, Sr., filed the present suit against Mr. Oertling, Ken Begnaud, the owner of the deer farm in Carencro, Louisiana, and Stacy Fontenot.[1] The plaintiffs claimed damages including loss of income, expenses of maintaining the Hodge Farm while under quarantine, and the costs associated with the testing of the deer, the loss of value of the deer and the cost of additional deer not being born. They also filed a direct action suit naming Vigilant, Mr. Oertling's homeowner's insurer for his home in Slidell, Louisiana.

Shortly thereafter, on November 4, 2013, the Hodges' signed a settlement agreement with the LDAF which dismissed the Hodges' suit against the LDAF.

_____

[1] Mr. Fontenot was subsequently dismissed.

The parties agreed that the LDAF would be allowed to depopulate the Hodge Farm at the LDAF's expense. After the settlement was perfected between the Hodges and the LDAF, the defendants in the companion suit, Mr. Oertling, Mr. Begnaud, Mr. Fontenot, and Vigilant, filed a motion for summary judgment claiming that the settlement also released all claims against them. The trial court granted the summary judgment, dismissing the plaintiffs' claims. Mr. Hodge, Jr., the Estate of Mr. Hodge, Sr., and Rachel Hodge appealed.

By June 6, 2018 opinion, a panel of this court reversed the trial court's entry of summary judgment and remanded the matter for further proceedings. *See Hodge v. Oertling*, 17-1071 (La.App. 3 Cir. 6/6/18) (an unpublished opinion) (2018 WL 2731338). Addressing the matter before it, the panel determined that the settlement agreement and release between the Estate of Hodge, Sr. and Donald Hodge, Jr., individually and as administrator of the Estate of Hodge, Sr., and Rachael Hodge, did not also release claims against the remaining defendants in the second-filed litigation under review.

As relevant to the matter now under consideration, Mr. Oertling and Vigilant assert that Mr. Hodge, Jr. changed the factual narrative concerning the CWD transmission risk of the whitetail deer formerly housed at the Hodge Farm in the tort litigation. Specifically, they contend that Mr. Hodge, Jr. signed verified documents filed into the record of the LDAF litigation wherein he admitted that the deer penned on the Hodge farm indeed **constituted a CWD transmission risk**. This sworn admission made by Mr. Hodge, Jr., allowed the fenced deer on the Hodge farm to be euthanized by the LDAF in lieu of a lengthy five-year quarantine. Additionally, the Estate of Hodge, Sr. was paid $12,000 by a Louisiana Deer Trade Association. The notarized documentation executed by Mr. Hodge, Jr., in

4

connection with the settlement with the LDAF, also allowed the Estate of Hodge Sr. to sell a portion of the farmland and equipment for $390,000. Mr. Hodge, Jr. admitted in his deposition testimony to executing this strategy causing all of the above mentioned events to occur.

Mr. Oertling explains, however, that in the present litigation Mr. Hodge, Jr. has taken the opposite position from the one expressed in the documents filed in the suit with the LDAF and in connection with the settlement of that proceeding. For instance, in the Petition For Damages, filed October15, 2013, Mr. Hodge, Jr. claimed that the whitetail deer at the Hodge Farm **never** constituted a CWD transmission risk, and therefore were destroyed unnecessarily.

Mr. Hodge, Jr., on behalf of the Estate of Hodge, Sr., now seeks tort damages from Mr. Oertling for the one-hundred-and-forty whitetail deer euthanized by the LDAF, as well as damages sustained as a result of the imposition of a possible five-year quarantine by the LDAF. Mr. Hodge, Jr., on behalf of the Estate of Hodge, Sr., argued that Mr. Oertling breached a duty to immediately disclose the whereabouts of the whitetail deer he bought from Mr. Hodge, Sr. Because of Mr. Oertling's breach of that duty, the LDAF imposed the five-year quarantine on the Hodge farm. Mr. Hodge, Jr. admitted during his deposition testimony, however, that one-half of the whitetail deer destroyed on the Hodge Farm actually belonged to Mr. Oertling.[2]

*Motions Before The Trial Court Now On Appeal*

The trial court heard three motions on May 7, 2021. The first was a motion

---

[2] The record reflects that in September of 2018, Mr. Oertling pled guilty to conspiracy to violate the Lacey Act ( for his "illegal transportation of whitetail deer" to Mississippi) in violation of 18 U.S.C. § 371 and *See* 18 U.S.C. § 371; 16 U.S.C. §§ 3371-3378. Among other penalties Mr. Oertling was sentenced to 36 months of probation and required to pay $120,000.00 in restitution for that offense.

in limine filed by Mr. Oertling seeking to exclude the Estate of Hodge, Sr.'s expert, Mr. Jeffery Campbell. A Renewed Motion For Summary Judgment on Coverage was filed by Vigilant, who provided homeowner's insurance to Mr. Oertling for his home in Slidell, Louisiana. The third motion was a summary judgment filed by Mr. Oertling seeking to dismiss all claims filed by the Estate of Hodge, Sr. seeking tort damages for the whitetail deer euthanized by the LDAF, and for the imposition of the quarantine by the LDAF on the deer farm in Lake Charles, Louisiana.

All motions were granted by the trial court in two separate judgments, both signed by the trial court on May 28, 2021. The first judgment granted Vigilant's Renewed Motion For Summary Judgment on Coverage and dismissed all claims against Vigilant with prejudice. The second judgment, also signed on May 28, 2021, granted two motions filed by Mr. Oertling, which included a motion in limine excluding Mr. Jerry Campbell as an expert witness for the Estate of Hodge, Sr., and summary judgment dismissing all claims filed by the Estate of Hodge, Sr. with prejudice. The trial court dismissed, without prejudice, Mr. Oertling's motion for sanctions against the Estate of Hodge, Sr., and ordered each party to be responsible for their own court costs. The Estate of Hodge, Sr. has appealed the trial court's rulings in both judgments, with the exception of the dismissal of sanctions sought by Mr. Oertling.

## ASSIGNMENTS OF ERROR

The Estate of Hodge, Sr. urges the following assignments of error on appeal:

1. The trial court erred in granting the motion for summary judgment as the actions of Jared Oertling caused damage to the Estate which create a genuine issue of material fact.

2. The trial court erred in granting the motion for summary judgment on coverage when the clear language of the policy does not exclude coverage based on the intentional acts and the

business operation exclusion.

3.  The trial court erred in granting the motion in limine to exclude Appellant's expert witness at trial.

## LAW AND DISCUSSION

*Standard of Review*

The abuse of discretion standard is used by an appellate court in reviewing a trial court's decisions regarding motions in limine. *Royer v. State, Dep't. of Transp. & Dev.*, 16-534 (La.App. 3 Cir. 1/11/17), 210 So.3d 910, *writ denied*, 17-0228 (La. 4/24/17), 221 So.3d 69.

*Motion To Exclude Expert Testimony of Mr. Jeffrey Campbell*

In keeping with the order of the trial court's rulings at the hearing held on May 7, 2021, this court will first address the Estate of Hodge, Sr.'s assignment of error three, the trial court's ruling granting the motion in limine filed by Mr. Oertling to exclude the Estate of Hodge, Sr.'s expert Mr. Jerry Campbell from testifying at trial.

Plaintiff's Expert Witness List, dated June 18, 2019, indicated that Mr. Campbell intended to testify as follows at trial:

> Mr. Campbell will testify about raising whitetail deer in captivity including the purposes thereof, the value of the whitetail deer held on the Hodge Deer Farm before the extermination of the [herd], the income the Hodge Deer Farm could have generated had it been allowed to continue operation or partnered with others to continue operation, Chronic Wasting Disease, operation of deer farms, feeding, watering and caring, for whitetail deer, and all other matters related to the whitetail deer.

Although Mr. Campbell was professionally qualified, the trial court determined that he had not been given all the data necessary to construct an expert report that would be helpful to the jury. Therefore, Mr. Campbell's expert testimony would only serve to confuse the issue with the jury, especially since the

7

jury would be required to determine how many deer were owned by Mr. Oertling and how many by the Estate of Hodge, Sr.

The Estate of Mr. Hodge, Sr., argued at the hearing on the motion that Mr. Campbell provided his report and his CV, which showed he was very experienced in appraising deer, having begun appraising deer in 2005. He had never been disqualified as an expert in any court. Counsel argued there was enough information in his report not to exclude him at that time and, if a trial were held, opposing counsel could question his methods, qualifications and underlying facts in his opinion. Counsel therefore contended that Mr. Campbell was qualified under La.Code Civ.P. art. 702, and the trial court should, therefore, deny the motion.

The trial court disagreed. Mr. Campbell's Expert Report stated that the herd owned by Donald Hodge, "was depopulated in the fall of 2013. Total 140 deer." Mr. Campbell indicated that his opinion in the Expert Report was based on "Fair Market Value at the time of death." Mr. Campbell also based the damage estimation on "industry wide standards," which provided that, "[E]ach doe would have been expected to produce 2 fawns each year." Does most common birth of 2 fawns is one buck and one doe." "Based on 3 years production each doe would have produced 3 bucks and 3 does in 3 years."

In his Expert Report Mr. Campbell "[E]stimated that there would be 82 does in the herd at the time of depopulation." So, a loss of 82 bucks per year at $10,000 each over a period of three years would equal $2,460,000.00. The loss of 82 does per year at $5,000 each over a period of three years would equal $1,230.000.00, for a total production of $3,690,000.00.

The trial court reiterated in it reasons given on the record that Mr. Campbell

did have the proper qualifications, as he had never before been excluded from testifying at trial. However, the trial court was extremely familiar with the documents and data submitted during discovery, and determined that Mr. Campbell had not been supplied by counsel for the Estate of Hodge Sr., with the information necessary to assist the jury at trial, based on the report before the court.

In its oral reasons for ruling the trial court stated:

> All right. Well[,] you notify Mr. Campbell to strike one up in the lost column. I'm going to grant the motion. Mr. Campbell is excluded as a witness at this time based off of his report, which I believe wholeheartedly he lacks sufficient facts and data. Part of the facts of this case, I have over two big stacks of facts and data that he does not address in his report. I believe he only spit out calculations based off of what was provided to him. And this is not addressing his expertise, whether or not he can provide calculations in the future. This is solely based on the motion I have before me at this time and his report. He's excluded as an expert to put forth any information or opinions regarding his calculations based on insufficient facts and data. I do not believe his information will help the jury make any determination at this time, because they have to make other determinations. And this does not speak to his skill or experience or training or education under [La.Code Civ.P art.] 702, that's what I'm guided by. I'm performing the gatekeeping function of the Court and I will not let the jury hear his testimony as it presently stands.

> That's the ruling of the Court….

The trial court then granted the motion of Mr. Oertling to exclude Mr. Campbell as an expert at trial. Based on the reasons stated by the trial court, we find there was no abuse of discretion on the part of the trial court, and affirm the portion of the judgment of May 28, 2021, excluding Mr. Jeffery Campbell as an expert witness on behalf of the Estate of Hodge, Sr.

*Standard of Review – Summary Judgment*

A court of appeal reviews summary judgments de novo, using the same standard used by the trial court. *Higgins v. Louisiana Farm Bureau Cas. Ins. Co.*, 20-1094 (La. 3/24/2021), 315 So.3d 838. Pursuant to La.Code Civ.P. art.

9

966(A)(2), the summary judgment procedure is favored and must be construed to accomplish its purpose of "the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969."

Article 966(A)(3) further provides that the "motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." When the issue presented by the motion for summary judgment is one on which the movant will not bear the burden of proof at trial, the movant must show "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). The adverse party must then "produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

*Vigilant's Renewed Motion For Summary Judgment On The Issue Of Coverage*

The trial court next heard Vigilant's renewed motion for summary judgment on the issue of coverage based on the allegations made by the Estate of Hodge, Sr., against Mr. Oertling's homeowner's policy, which provided coverage for his home in Slidell, Louisiana.[3]

The case of *Melder v. Louisiana Farm Bureau Mut. Ins. Co.*, 02-2674 (La.App. 1 Cir. 2/11/05), 906 So.2d 513, *writ denied*, 05-0671 (La. 5/6/05), 901 So.2d 1098, provides the framework for the trial court's determination of the application of a policy exclusion to the facts before the court. The panel in *Melder*

---

[3] Mr. Oertling also opposed the summary judgment filed by Vigilant with the trial court, but did not appeal the trial court's ruling. Only the Estate of Hodge, Sr. filed a direct action petition seeking coverage in 2014, a year after suit was filed against Mr. Oertling. Mr. Oertling never submitted a claim for coverage, or requested a defense from Vigilant.

explained:

> An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. *Ledbetter v. Concord General Corp.*, 950809 (La.1/6/96), 665 So.2d 1166, 1169. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. *See* LSA-C.C. art. 2046; *Magnon v. Collins*, 98-2822 (La.7/7/99), 739 So.2d 191, 197. Further, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. And finally, regarding such limitations, it is the insurer's burden to show that a loss falls within a policy exclusion. *Classert v. Butler*, 98-1991 (La.App. 1st Cir.11/5/99), 746 So.2d 787, 792.

*Id.* at 515.

The trial court agreed with counsel for Vigilant that Mr. Oertling's guilty plea for the illegal transportation of whitetail deer to Mississippi, which is uncontradicted, definitely excluded coverage under the policy provision for Intentional Acts. Intentional Acts in the Vigilant policy at issue provides:

> **Intentional Acts:** We do not cover any damages arising out of an act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than intended or expected. An intentional act is one whose consequences could have been foreseen by a reasonable person. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies. This exclusion does not apply to Employment practices liability.

The trial court also found that there was no question that the Business Pursuits Exclusion excluded coverage under the policy based on the undisputed evidence that Mr. Oertling and Mr. Hodge, Sr. were in business together with Mr. Oertling providing the capital and Mr. Hodge buying, caring for, and advising Mr. Oertling about the sale of the deer he purchased on behalf of Mr. Oertling.

Business Pursuits in the Vigilant Policy provides:

> **Business Pursuits:** We do not cover any damage arising out of a covered person's business pursuits, investment or other for-profit

activities, for the account of a covered person or others, or business property.

But we do cover damages arising out of volunteer work for an organized charitable, religious or community group, an incidental business away from home, incidental business at home, incidental business property, incidental farming, or residence premises conditional business liability unless another exclusion applies.

The Policy also explicitly defines the term "business" as "any employment, trade, occupation, profession, or farm operation including the raising or care of animals" Although the Policy goes on to define each of the limited carveout exceptions to the business pursuits exclusion, none of those exceptions apply here, and the Estate of Hodge, Sr. does not argue otherwise.

Further, the trial court found that the Vigilant policy provisions also did not provide coverage for any damages suffered by the Estate of Hodge, Sr. based on the LDAF quarantine placed on the farm located in Lake Charles, Louisiana. In making this determination, the trial court relied on an affidavit filed by the defense in which the LDAF Assistant Commissioner testified that "… investigation indicated that the deer farm was likely involved in an illegal deer-smuggling operation," which compelled the quarantine, along with the discovery of legally insufficient records from Mr. Hodge, Sr.

The trial court stated in its oral reasons given on the record at the hearing on May 7, 2021:

> The Court is going to grant Vigilant's motion to exclude coverage for these proceedings. I do not find there's any genuine issue of material fact and none can be re-created by arguing various theories, alleging various theories, and walking back on various theories.
>
> As to the intent, I believe the guilty plea cannot be disputed. It is a material fact. The allegations and the facts all developed thus far –just because you can maybe dispute the implications of or have a different interpretation or different argument, the Court looks at the

12

summary judgment standards with regard to intent. I do not believe there's a genuine issue regarding intent in this matter on Mr. Oertling's behalf. Therefore, there's a very elaborate operation spelled out in the facts with regard to the deer and how they were transported from Pennsylvania, I believe – if I'm not right about the state the record will reflect the correct state, coming down to Carencro or Crowley in the transport. That's not disputed. That's facts. That's in evidence. And people may be able to interpret that differently, but for summary judgment, I do not. I do not believe it's a genuine dispute of fact on that issue.

As to the business pursuits, the policy exclusion does not talk about whether you're making money or if there was a profit. It talks about a person's business pursuits. Business is defined as farm operation, raising or care of animals. So[,] the Court reads, "We do not cover any damage arising out of covered person's raising or care of animals in this policy." I do not believe there's a genuine issue of material fact as to the dispute of [what] Mr. Oertling was raising, had a farm operation, whether it was in Mississippi or Louisiana, raising animals. A deer is an animal.

For those reasons, Vigilant is out….

After conducting a *de novo* review of the record, we affirm the ruling of the trial court, granting Vigilant Insurance Company's Renewed Motion For Summary Judgment and dismissal of all claims made against Vigilant by the Estate of Hodge, Sr., with prejudice.

*Motion For Summary Judgment Filed On Behalf Of Defendant Jared Oertling*

The trial court's ruling granting the summary judgment against the Estate of Hodge, Sr., and in favor of Mr. Oertling states as follows:

We're here today on a Motion For Summary Judgment filed by Jared Oertling. It has been well briefed and well opposed with pleadings, attachments, the history of the case, as well as Mr. – as well as the Hodge [E]state opposition. The court has taken that into account and has appreciated the Hodge's [E]state affidavits. Because of my ruling -- I'm not going to rule on whether the affidavit testimony comes in because it was – I read it, but it did not affect the elements of the argument, does not affect my ruling, so I'm not going to throw them out because it's not going to matter. I do not find – I am granting the Summary Judgment dismissing the case by the [E]state against Oertling – as prayed for by Oertling, let me say it that way. I don't know what it does to the rest of the defendants. And –

so I'm just speaking on the motion that's filed before me. I'm denying that -- I'm granting that motion, excuse me, granting that motion. I do not find a duty exists and for that – there's many, many reasons why I'm granting their motion and I'll go through them for you because I know a record needs to be made and an explanation, and the [E]state is entitled to an explanation and reasons for my judgment.

I do not find a duty between Jared Oertling and Donald Hodge, [Sr.] There is no – material fact to me is that tainted deer came from Pennsylvania on Mr. Hodge, [Sr.'s] ticket, if you will. For that reason alone, based on the affidavit of the LDAF agent way back in 2013, the farm would have been quarantined.[4] No genuine issue about that. It's a material fact because the farm had been quarantined. The fact the farm had been quarantined by the actions of Donald Hodge [Sr.] tells me that quarantine would have happened. Any damages from that is on Donald Hodge,[Sr.] The facts speak to that, that's where this case is at. We've had over seven years of discovery, dispositions, records I've reviewed myself since I've been on the bench. It is clear to me no equivocation whatsoever that there's no genuine issue of that material fact with regard to the quarantine. I do not find a duty owed by Oertling to Donald Hodge, Sr. Because of the facts and how this was developed, and Hodge, whether it was hobby or not, Hodge with Oertling or not, that's immaterial to me with regard to this ruling. He in fact was transporting some deer that was going to go to Oertling. That's clear in the facts. That's undisputed. It's material to me and it's material – and I do not believe a reasonable factfinder could find otherwise and these particular facts speak to a particular ruling that – that—and that's what I'm basing it on under Summary Judgment Law.

*Trial Court's Recognition Of Judicial Estoppel Based On Actions Of The Estate*

The trial court further found that judicial estoppel applied, as urged by Mr. Oertling in his motion and order for leave of court to file supplemental and/or amending affirmative defenses, signed by the trial court on March 19, 2021. The Estate of Hodge, Sr. did not brief this issue at the district court level and failed to specify error on appeal or brief it on appeal to this court. See Rule 1-3, Uniform Rules, Louisiana Courts of Appeal ("The Court Of Appeal will review only issues

---

[4] In an affidavit filed by the defense, the LDAF Assistant Commissioner testified that "…investigation indicated that the deer farm was likely involved in an illegal deer-smuggling operation" **which compelled the quarantine**, along with the discovery of legally insufficient records from Mr. Hodge, Sr.

which were submitted to the trial court and which are contained in specifications or assignments of error, unless interest of justice clearly requires otherwise.").

The Louisiana Supreme Court has explained that "'judicial estoppel [is] an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Webb v. Webb*, 18-0320, p. 9 (La. 12/5/18), 263 So.3d 321, 328 (quoting *Miller v. Conagra, Inc.*, 08-0021, p. 9 (La. 9/8/08), 991 So.2d 445, 452).

Although its equitable nature precludes the reduction of equitable estoppel to a precise formula or test, the United States Supreme Court has noted that several factors typically inform a court's decision on its application as follows:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position .... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> *Zedner v. U.S.*, 547 U.S. 489, 504, 126 S.Ct. 1976, 1987, 164 L.Ed.2d 749 (2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968).
>
> The doctrine of judicial estoppel "is designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Miller*, 08-0021 at 9, 991 So.2d at 452 (citing *New Hampshire*, 532 U.S. at 749-50, 121 S.Ct. 1808).
>
> *Webb*, p.18, 263 So.3d at 332.

Noting its "equitable" nature, the Louisiana Supreme Court explained in *Webb* that the doctrine of estoppel is invoked at the court's discretion given the specific factual context before it, including any harm that may be posed to third parties. *Webb*, 263 So.3d at 332.

The trial court's reasons that the application of equitable estoppel was warranted in this case were explained on the record in open court:

> I'm further dismissing the matter under judicial estoppel. Whether I independently found Summary Judgment or not, I separately find that this matter and [E]state is prohibited from deliberately changing positions as they see fit under this fact pattern. I think seven years of discovery is sufficient enough to – if there's some other evidence developed. It has been difficult for the Hodge [E]state to make arguments today. The Court is familiar with a party having to allege alternative theories. This is not an alternative theory case.
>
> This is a charge of strategies as it sees fit during the course of litigation that has led to inconsistent position[s], inconsistent statements, inconsistent arguments, inconsistent motions and rulings, quite frankly, based upon the inconsistent positions already given by the [E]state. So, I find the first element under judicial estoppel, and so applying the parties position must be clearly inconsistent one. We have that here.
>
> The Court must have accepted this previous position. I have accepted previous position myself because I made a ruling on the intentional claims under Vigilant as – as to Vigilant's dismissal and there have been other arguments that the Court has accepted prior to me and since I've been on the bench regarding the various positions that Hodge [Estate] has submitted to the Court.
>
> And lastly, the prior positions have not been inadvertent. It's not inadvertence. There's two mutually exclusive lawsuits that began in this case way back in 2013 or so, arguing two different theories, two different positions. And depending on what the outcome could have been, depending on what the benefit to the [E]state was, that was the argument that was put forward. I do not see that as alternative theories. I see that as strategy decisions based to maximize whatever recovery, maximize arguments, and for those reasons, I find the positions taken by the [E]state in this matter, the various positions, not to be inadvertent.
>
> For those reasons, I'm granting the Summary Judgment. Any clarification needed on my ruling – rulings today?

Finding no abuse of discretion, we hereby affirm the trial court's ruling on this issue.

*Motion For Sanctions Filed On Behalf Of Jared Oertling*

Mr. Oertling's motion for sanctions against the Estate of Hodge, Sr. had been deferred by the trial court until after the trial. However, for the sake of completeness of the record, the trial court denied the motion for sanctions in its May 8, 2021 judgment. We likewise find no abuse of the trial court's discretion and affirm its ruling.

## CONCLUSION

For the foregoing reasons, we affirm the May 28, 2021 judgments of the trial court which granted Vigilant Insurance Company's Renewed Motion For Summary Judgment on Coverage and dismissed all Claims made by Donald Hodge, Jr, As the Administrator of the Estate of Donald Hodge, Sr. with prejudice. We also affirm the second judgment granting the motion in limine filed by Jared Oertling, excluding the plaintiff's expert Jerry Campbell as an expert witness at trial. We further affirm the second judgment granting the motion for summary judgment filed by Jared Oertling in its entirety dismissing all claims made by Donald Hodge, Jr, As the Administrator of the Estate of Donald Hodge, Sr. with prejudice. Additionally, we also affirm in the second judgment the trial court's determination that "[E]ach party shall be responsible for the court costs respectively incurred by them."

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.